Number 162109, Yochal Bekele v. Lyft, Inc. Good morning.  Just a moment. Let's let your brothers be seated. All right. Good to go. Thank you. May it please the Court, I'm Shannon Lisserian. For the plaintiff with me is Adelaide Pagano. I'd like to reserve two minutes, if I may, of my argument. Yes. Thank you. Your Honors, this case raises an extremely important question. In today's world, where people are more and more often being asked to agree to things and give up important rights through an online context, in this case it is really simply just a legal fiction, if anything, that the arbitration clause, including the class action waiver here and waiver of a jury trial, was actually reasonably conspicuous to a Lyft driver such as Mr. Bekele. It appeared on an iPhone screen that he would have had to scroll down 40 screens in order to see. You're not going to be surprised by my doing this, but we have the issue of was there a meeting of the minds to form a contract. Then we have the issue of even if so, is the contract unconscionable under state law, assuming state law is consistent with the FAA, unconscionable either procedurally or substantively. So could you organize your remarks in that context? Yes, I will, Your Honor. So in this Court's decision in Cullinan v. Uber, and also in the Massachusetts Appeals Court decision of Ajeemian v. Yahoo, in both cases the courts refer to whether or not terms within an online contract are reasonably conspicuous. And that's important in the Ajeemian case, which is the highest Massachusetts court to consider enforceability of online contracts. It referred to whether a form selection clause and a limitations clause within the agreement was reasonably conspicuous, rather than just whether an agreement itself was formed. And if you look at the Cullinan decision as well, this court also focused on whether it referred to whether contract terms were reasonably conspicuous. Now, here the term we're talking about is the arbitration clause, and in particular there are issues with this arbitration clause, such as the class action waiver, that were really not conspicuous by any stretch of the imagination. And the U.S. Supreme Court's decision in Concepcion, footnote 6, specifically allows states to make rules regarding, to mitigate issues of adhesive contracts. So in Concepcion, although the Supreme Court rejected the argument that a class action waiver itself was, in and of itself, for example, unenforceable, it permitted in footnote 6 states to make particular rules regarding adhesive contracts. And here I submit that the Massachusetts SJC, which has not been called upon directly to address these issues, in this day and age when contracts such as this are trying to slip by users waivers of important rights, such as waiver to a jury trial, as well as waiver of the ability to bring a class action, I submit would not condone this type of agreement. If this court has any question about that, it could certify this question to the Massachusetts SJC. Another point that I want to make is with respect to the reasonably conspicuous nature of what this court looked at in Conning and overturned the district court decision in Conning based upon finding that Uber's agreement was not reasonably conspicuous. The court relied on, looked to Massachusetts statutory sections 106-1-201 as well as chapter 156D to say that reasonableness, the reasonable conspicuousness inquiry would be a question for the court. But those are statutes concerning business contracts and the UCC, which I don't think would be applicable here where there's an allegation this is an employment contract. So I submit that also if there's any question, this should go to a jury, whether it really was reasonably conspicuous to a Lyft driver that this clause was buried so far down. Well, are you saying, and I'm reading your brief, are you saying that this clause had to be the first clause in this agreement? What are you saying about it's certainly conspicuous, it's separated, it's an Elijah case, and so forth. What do you think should have been done? Well, we don't have to say, and the court doesn't have to decide what would have been. Of course, the court only has to determine based on these facts things that could have happened. For example, in Conning, if you look on page 24 of Lyft's brief, they side-by-side, they show you the screenshot for Uber's screenshot and the screenshot for what we have here. In Uber's, if you had typed in the information, the credit card information, then the done button would have lit up. You couldn't press done until you had done that. Here, the I accept could have been not clickable until you had scrolled down, and that's exactly what happens in a so-called scroll-wrap agreement. Or Lyft could have put some mention of the arbitration clause with the jury and cross-section waiver up front, which in fact it later did, although that's not in this record. So there are things that could have been done. As a practical matter, there's really not a difference between what this court struck down in the Cullinane case and what happened here. But doesn't Massachusetts law say that if you don't read it, you're bound by it? You have some obligation to read it. The whole agreement is here. It's readable. Your client just didn't read it. Well, if you look at the case of Skrčak v. DRC that this court decided, there, there was an agreement that was attached to an email, and the court noted that the company could have checked to see who actually opened the attachment but didn't. Here, Lyft could have required that you can't click I accept until you had scrolled down. And also, interestingly, in the Skrčak v. DRC case, the court did look at whether or not there was actually a contract because it didn't even get to the substantive unconscionability analysis. It really decided it on something that was more akin to whether there was an agreement to those terms under something more like a procedural unconscionability analysis. Well, Counsel, because you have only about a minute left, and you have already mentioned the unconscionability issue, I have this question. As I understand the Massachusetts law, there must be both procedural and substantive unconscionability. Conscionability. If you cannot prove both prongs of unconscionability, you don't have a claim under that doctrine. My question is, does the offer by Lyft to pay all the arbitration expenses here, in effect, moot the possibility of substantive unconscionability as you have presented it here? No, Your Honor, it does not, and it should not, because... Why? I mean, your argument, as I understand it, is the economic argument. They can't afford, you know, to pay the cost of the arbitrator and so on. So why doesn't the offer to pay all the expenses moot that point that you're making? Because the inquiry needs to focus. The unconscionability inquiry focuses as the cases we've cited set forth at the time of the contract formation, at the time the contract is offered. Otherwise, it has a deterrent effect. Other people who perhaps might go to a lawyer's office, they'll see that there's this contract that's going to require them potentially to pay thousands of dollars even to get their foot in the door. And if a company can just get out of such an unconscionability issue by once someone is in court and offering to remove that, that, first of all, that's a unilateral change to the contract because they're trying to then make the contract better so it's enforceable, even though Mr. Bickelli never agreed to such a contract that didn't have that term. And then other drivers, when presented with it, how are they going to know that once actually in court, once actually having gone through this whole process, the company is then going to say, oh, you know, never mind. We just want to enforce that provision of the contract. Unfortunately for your position, this court in 2002 in the large case rejected your argument. I don't believe that was actually presented and argued in that case, Your Honor. I think it was just happenstance. I'm quoting Judge Lopez's holding. No such showing of unconscionability about arbitration costs is possible because CONSECO has agreed to cover the costs of arbitration. The offer to pay the costs of arbitration and to hold it in the home state meets the issue of arbitration. Obviously that was made after it was not made at the time the contract was formed. The large case has been cited and followed. Whether it's wise or not, it appears to be our law. Is there a Supreme Court case since then that you say would undercut my reading of the large case? What I'm saying is that the argument that I'm making right now does not appear to have been made in the large case, that it shouldn't be good enough for a cut party to just say they're going to forget about a term once they're actually in court. I don't believe this argument was made that that would have a deterrent effect. What about everyone else? Are they now getting rid of that term for everybody else and how is anyone to know that? I don't believe this argument was made in the large case. I don't know whether it was made or not. It was not considered. How do you know that? Were you counsel on that case? No, but I'm not aware from the decision that there's any indication that this argument was considered. The decision does not say that that argument was not made. All right. That's one response. But would you answer the question that I asked you? Is there anything in Supreme Court case law since 2002 which would call into question the validity of that ruling in the large case? As I stand here right now, all I can say is I know that we have cases in our brief that you look at unconscionability at the time the contract was formed, and I believe some of those cases post-date 2002. Are they First Circuit cases? I don't know if they are. I look at them before my rebuttal, if I may. Yes, certainly. Okay. Thank you, Your Honor. Thank you. Counsel, I don't want to dictate the sequence of your argument, but I trust at some point you will take up the discussion that we've just had on the significance of the offer to pay the expenses. Yes, Your Honor.  I'd like to start just briefly to reiterate that we do feel strongly about the forfeiture point, and I won't belabor it. We briefed it. Don't belabor it. Move on. Perhaps you would like to answer Justice Souter's question. Sure. Well, let me start by saying that I agree with Judge Lynch that large is binding precedent. But beyond that, the AAA amended its rules 16 months ago, on October 1, 2017, to specify that cases like Mr. Bekele's will be treated under the employment rules, not under the commercial rules. And under the employment rules, their costs are limited to $300, which is less than the federal filing fee. And Ms. List-Riordan knows this because she has filed multiple such arbitrations against Lyft, using the employment form under which her clients were not required to pay any more than $300. So this deterrent effect that she has hypothesized about a driver going to a lawyer's office and being told you're going to bear unreasonable arbitration costs is an invalid hypo under those rules. So I think that sort of reinforces the point. The law requires that you look at the time of contract formation, assuming there is a contract form. But that time, you would say that the agreement provided that the AAA rules would apply, and with the amendment of the AAA rules, this matter has become moot, in addition to the offer that was made in the district court that, well, actually a more generous offer, that no more than 50 or all expenses would be borne by Lyft. Yes, precisely so. Okay. I'm not sure. I just have this sense that maybe the Supreme Court has, in fact, said something about this in the years since 2002 about offers that are made which remove an issue from a case. In the arbitration context? Yes. I'm not aware of any. I know the court has said that the plaintiff bears the burden of showing that the costs will be unreasonable, and you can't meet that burden when the defendant says we'll pay them, and furthermore, when that's now what the arbitration administration organization is providing for. But as I stand here, I can't think of a case that specifically addressed an offer to waive costs. This case started out in the state system? Yes. What's the filing fee in the state court? Good question. I'm afraid I don't know the answer. Okay. And then it gets removed, and Lyft then moves. So Lyft bears the filing fee in the federal court? Yes. I had to ask my expert, but that's what I'm told. He's removed a lot of cases in his career. I think that's right. Okay. And then if it goes to arbitration, the drivers cannot be forced to pay more than $300? That's correct, and they can still, on top of that, get a hardship waiver if they can't afford the $300. Okay, and then as I understood it, as of some point in 2018, Lyft changed or extended to all drivers an assurance that no more than $50 of arbitration fees would be visited on the drivers? I believe that was 2016. 2016. It's not clear from the record. 2016. Okay. And is that part of your argument that that disposes of the procedural unconscionability point? Procedural or substantive? Well, it's hard to tell. All right. Substantive unconscionability. Well, that was as a result of a settlement in another case, and it was designed for claims that were $5,000 or less. Here, with the AAA rules, they apply regardless of the size of the claim, and I believe that when Ms. Reardon files her claims, she doesn't specify a size. So the AAA applies the $300 one instead. But aren't you, in effect, arguing the case that is not before us now? Because in the case that is before us, as I understand it, Lyft is going to pick up the entire tab. That's correct, John. I have a factual question I'm sort of interested in. As I read the briefs, I got the sense that the man's in the car with a woman, and they see this ability to be a Lyft driver. And they scroll through this agreement, and they say, I accept. At what time can you actually become a Lyft driver after I accept? Because I assume even then, when this case arose, you had some vetting of the people who were seeking to become Lyft drivers. That is a great question, and I didn't investigate it, but I'm pretty sure that the answer is correct. I mean, you have to pass background tests and stuff. So it isn't a situation where you suddenly get this brilliant idea, I'm in downtown Boston, I'm sitting in traffic, and I scroll through this thing, and I say, I accept. And you immediately start getting clients. Absolutely. In fact, if you look at Mr. Beckley's affidavit, he talks about having already been an Uber driver and having seen their terms and conditions on the same phone, mind you, that he claims he couldn't read when he pulled up the Lyft app. But, yeah, I think it's a matter of common sense that this was something he gave some forethought to and decided, yeah, I want to be able to diversify my business by adding Lyft to Uber. Maybe I ask a follow-up question to Judge Stowell's, and that is this, and to begin with, my first question is factual. I'm not sure that I remember this properly from the briefing, but was one of the terms that somebody who actually did read the entire document would find, was one of the terms that Lyft could modify, change those terms unilaterally without giving notice to that effect? Well, I think it says that we would give notice. Oh, well, that's the end of my question, then. I didn't remember it properly. Okay. I withdraw further interruption to your argument. Well, there are three in the appendix, but JA31 is, I think, the operative one where it says we may amend this agreement at any time by posting the amended terms on the Lyft platform. If we post amended terms on the Lyft platform, you may not use the services without accepting them. Well, I'm not sure what the mere reference to platform is going to do by giving notice to the driver. When the driver sort of clicks on in the morning, is there going to be a conspicuous notice saying, by the way, there's been a change, you better look, or will he have to scroll through the entire 18 or whatever pages to find out whether there has been a change? I don't know the answer to that, Your Honor. May we submit that by letter after the argument? I think it would be helpful because I think it would go to the point of procedural unconscionability. Well, I don't know if that's in the record below. Well, you can file a 28-J letter. Try to reach an agreement on what the facts are on this particular point. How is notice given to the drivers of any change in terms and conditions? May I make one other point before I sit down? Ms. Weirden referred to footnote 6 in Concepcion, and as I think the Court is aware, in Doctors Associates v. Casarota, the Supreme Court made quite clear that the FAA preempts heightened notice requirements, and to read a two-sentence footnote in a case that doesn't involve the issue to sub silencio overrule another Supreme Court case I think is not plausible, and this Court, in fact, has followed Casarota in an opinion Your Honor wrote in the Awuah v. Coverall case post-Concepcion, so I don't think that dog will hunt. Thank you, Your Honor. Okay, I want to be clear. You're going to try to reach an agreement, both counsel and submit one letter. If you cannot submit two letters, and both of those letters should also address not only the notice to the driver of change in conditions, but also my question about whether there's Supreme Court precedent calling the large case into question, okay? And depending on what I hear on rebuttal, maybe there will be more that we'll want to know. Give me more time. Those should be filed within, is a week long enough for you? Yes. Okay. Thank you, Your Honor. On this large question, I believe this is an issue of state law, and I'll check, but I don't even think large involved Massachusetts law. It might have been Rhode Island. We've cited on page 23 of our reply brief. No, no, a mootness is a matter of federal law. Excuse me? Mootness is a matter of federal law. That dog won't hunt. We cited on page 23 of our reply that under Massachusetts law, whether a cause is unconscionable is assessed at the time it was made, and that's under Massachusetts Statute Chapter 106, 2-3021. To reach a couple of the other points quickly that were just raised, one, I'm well aware of the doctor's associate case, so when Concepcion came out without footnote six, I was taken aback a little bit, but I think the Supreme Court may have rolled back doctor's associate by making that so explicit in footnote six, and that may well have been how Concepcion was able to reach the majority it did. To go to Judge Stahl's question about whether a driver such as Mr. Bichelli signs up not just while he's in traffic, I want to remind the court that in this record, Lyft gives him the agreement to accept multiple times, including after he's already signed up initially, and in order to just start driving, just to go to work one day, he had to accept it again. So this is similar and even more extreme than the DRC, the Skritchak v. DRC case, where employees had a weekend to look it over and maybe open their e-mail or not. Are you saying there was no prior notice? It's only when the driver wants to pick up something and discovers he or she is no longer a Lyft driver because they haven't accepted the unilaterally changed terms? Yes, I think that's correct, but the point that I'm making is that even if he first signed up for Lyft and had the agreement not necessarily when he was about to start work that day while he was sitting in traffic, saying maybe I'll become a Lyft driver, after he had become a Lyft driver, when Lyft would periodically update him having to accept the agreement, he would be clicking on it that morning in order to get started working. And I'm just saying that that's a more extreme situation even than the Skritchak v. DRC case, where they were given this and if they continue, shut up on Monday. So this is a different argument than at the time of the initial contract formation where the driver may have had more time. You're saying once the person is a Lyft driver, if they want to continue, they first find out that they can't continue when they try that morning to continue and then they have to go accept? Yes, for the subsequent times that Lyft points to in the record that he accepted the agreement, that is the case. And finally, I want to make some comments about the issue about the AAA rules and the payment of fees because this isn't in the record and if the court is interested, we could well supplement. I did put into the record an example of a case in which I represented a claimant who was claiming to have been misclassified as an independent contractor and under the AAA rules, he was sent a bill for $3,750 just to get his foot in the door and even start his arbitration to even make an argument that he shouldn't be forced to pay arbitration and that is just an amount that a low-wage worker is simply not going to be able to pay. Some of Lyft's arguments that, for instance, later the contract was limited so that drivers would only have to pay $50, that was only for claims under $5,000, that wasn't for all claims. The hardship waiver that Lyft claims exists at the AAA is really just a fiction. I have had multiple cases, including what I put into this record, in which we have attempted to get our client's foot in the door to even start an arbitration only to have the case closed because the AAA requires a payment of thousands of dollars even just to get an arbitrator appointed to start making these arguments. And so again, it's a practical matter for Lyft just to say once we're at the courthouse, oh, never mind, forget about that, it's just, it encourages overreach. Okay, you've made your point and you're over time. Thank you. Thank you, Your Honor. I'm going to give your opponent one minute because you've raised some new matters. Is there a, if you want the one minute. Thank you, Your Honor. One point I didn't get to make when I was up for the first time. No, you can't do that. You can't use a response to do that. It's responsive to this point. Then you shouldn't have started that way. I won't hear you. Thank you. We cited in our brief the Supreme Judicial Court's decision in Machado, which is Massachusetts law, and it's binding, and it basically says that because of the Massachusetts fee-shifting rules, an argument that a fee-splitting provision is unconscionable is invalid, and that's binding Massachusetts law. Regardless of the factual circumstances? It seems to be a broad holding, and as long as there's a fee-shifting statute as there is here. So, you know, obviously under theory, this court can't sort of look behind that and say, well, they didn't consider the arguments misremade, so we won't follow it. Suppose you've got a waitress who's earning minimum wage in an area where there are not a lot of tips. Are you saying the SJC has said that this rule applies in that factual context? You seem to be saying that. Well, that's how I read the opinion, Your Honor. Okay. It's a paragraph or two, so I refer the court to the decision. Okay. Thank you. All right, 30 seconds. Thank you, Your Honors. In Machado, the SJC did not consider this issue about getting the foot in the door. They said they were only considering, oh, it could be paid back later, but that doesn't address this question about whether someone can even get the foot in the door, which the Supreme Court addressed in the Amex case, the Italian Courage v. Amex case, noting that inaccessibility of the form itself may be a different question than whether you can get it back later. Okay. Thank you. Thank you both. The court is going to take a recess after this for counsel waiting. You do have time to go to the bathroom before we are back. All rise.